### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

TIMUR NABIEV,                          :

        Petitioner          :      CIVIL ACTION NO. 3:26-904

v.                                     :          (JUDGE MANNION)

WARDEN, FCI Lewisburg, *et al.*,       :

        Respondents        :

### MEMORANDUM

Pending before the court is petitioner Timur Nabiev's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Nabiev's petition will be **GRANTED** insofar as it requests a bond hearing.

### I.    BACKGROUND

Petitioner Timur Nabiev is a citizen of Uzbekistan of Iranian ethnic descent. (Doc. 10-2 at 2). On January 19, 2021, he was encountered by Border Patrol while attempting to cross the United States-Mexico border near San Luis, Arizona. *Id.* at 3. He was then issued a notice to appear, charging him as an alien present in the United States without being admitted or paroled, in violation of §212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (Doc. 10-3). The next day, he was released from custody and enrolled in the Intensive Supervision Appearance Program ("ISAP"). *Id.*

Following his release, Nabiev was monitored by 24/7 GPS monitoring and complied with all conditions of his release. On July 24, 2024, Nabiev appeared at a routine scheduled ICE reporting appointment, where he was taken into custody without notice. (Doc. 1 at 16). He has been detained since then, and is currently located at FCI Lewisburg in Lewisburg, Pennsylvania.

On April 9, 2026, Nabiev filed the present petition for a writ of habeas corpus. (Doc. 1). On May 5, 2026, Respondents filed their response to the petition. (Doc. 10). On May 22, 2026, Nabiev filed a reply to their response, and on May 26, 2026, he filed supplemental briefing. (Docs. 11-13). The petition is now ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may

be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III.   DISCUSSION

### a. Jurisdiction

The court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited is some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the court's jurisdiction is not barred by §1252(g) as the petition neither challenges the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order

- 3 -

[of removal]." 8 U.S.C. §1252(b)(9). Here, the court's jurisdiction is not barred by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

- 4 -

### b. Exhaustion of administrative remedies

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Nabiev is detained under 8 U.S.C. §1225(b)(2)(A), which precludes immigration judges from holding a bond hearing. *See id.*; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that an immigration judge "has no authority to consider bond requests for any person who entered the United States without admission").

### c. 8 U.S.C. §1226(a) applies to Nabiev

Respondents argue that Nabiev is subject to mandatory detention pursuant to 8 U.S.C. §1225(b)(2)(A), which does not allow for courts to hold a bond hearing. Nabiev, on the other hand, argues that his detention under §1225(b)(2)(A) violates the INA and his procedural due process rights, and that he is subject to discretionary detention under 8 U.S.C. §1226(a), which would entitle him to a bond hearing.

Courts nationwide, including this court, have been dealing with the very issue presented in this case. Namely, whether a noncitizen habeas petitioner

- 5 -

who has been residing in the United States for some time is subject to the mandatory detention provision of §1225(b)(2)(A). In *Cunha v. Freden*, the United States Court of Appeals for the Second Circuit considered the issue and ruled that it is "clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." 2026 WL 1146044, *2 (2d Cir. Apr. 28, 2025). In reaching this conclusion, the court noted that its "holding is consistent with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position. In other words, over ninety percent of district judges have sided with Petitioner." *Id.* at *4. Since *Cunha*, the Sixth and Eleventh Circuits have joined the Second Circuit in ruling that §1226(a) applies. *Lopez-Campos v. Raycraft*, 2026 WL 1283891 (6th Cir. May 11, 2026); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 2026 WL 1243395 (11th Cir. May 6, 2026). The undersigned has also consistently joined in this consensus interpretation and will continue to do so. Indeed, the Government notes that it "recognizes that this Court and other jurists of this District have rejected Respondent's arguments . . . regarding 8 U.S.C. § 1225(b)." (Doc. 10 at 2).

For §1225(b)(2)(A) to apply: "(1) there must be an 'examining immigration officer' who determines; (2) that an 'applicant for admission'; (3) is 'seeking admission'; and (4) 'not clearly and beyond a doubt entitled to be admitted.'" *Bethancourt v. Soto*, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025) (citing 8 U.S.C. §1225(b)(2)(A)).

The consensus view of the courts is that "seeking admission" requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry." *Gonzalez Centeno v. Lowe*, 2026 WL 94642, at *3 (M.D.Pa. Jan. 13, 2026) (quoting *Quispe v. Rose*, 2025 WL 3537279, at *5 (M.D.Pa. Dec. 10, 2025)); *see also Cunha*, 2026 WL 1146044 at *8 ("When the statute says, 'alien seeking admission,' it therefore refers to a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is") (emphasis in original). An individual affirmatively "seeking admission" should not be confused as being the same as an "applicant for admission." *See Patel*, 2025 WL 3516865 at *5 (finding that such an interpretation of "seeking admission" violates the rule against surplusage). Therefore, because "seeking admission" applies to individuals in an affirmative act, §1225(b)(2)(A) does not apply to "noncitizens . . . who have resided in the United States for years." *Id.* Furthermore, while the "entry fiction" doctrine "allows the government to treat physical entrants as if still

- 7 -

'on the threshold' if they are 'detained shortly after lawful entry' . . . no one could seriously contend that it applies to a noncitizen like [the petitioner] who has been living in the United States for [an extended period of time]. Under settled Supreme Court precedent, 'aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Cunha*, 2026 WL 1146044 at *15 (emphasis in original).

As for §1226(a), it allows for the Attorney General to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). Pending that decision, the Attorney General "(1) may continue to detain the arrested alien; and (2) "may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." 8 U.S.C. §1226(a)(1)-(2). Where an alien is detained under §1226(a), they are still entitled to a bond hearing where they can argue why they should be released from detention pending a final order of removal. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see also Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 277-80 (3d Cir. 2018) (holding that individuals detained under §1226(a) are entitled to a bond

- 8 -

hearing, but not entitled to a second bond hearing after their first has been denied).

Here, Nabiev has been living in the United States since 2021. (Doc. 10-2 at 2). He was taken into immigration custody on July 24, 2024. *Id.* at 3. Therefore, he is not "seeking admission" as defined by §1225(b)(2)(A). Accordingly, 8 U.S.C. §1226(a) applies.

### d. Nabiev's detention under 8 U.S.C. §1225(b)(2)(A) does not violate due process

The Fifth Amendment protects against deprivation "of life, liberty, or property without due process of law. U.S. Const. amend. V. This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To determine whether a habeas petitioner's detention under §1225(b)(2)(A) violates due process, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

- 9 -

Application of the factors reveals no violation of due process. First, the "most elemental of liberty interest[s]—the interest in being free from physical detention"—is implicated. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Second, Nabiev's erroneous detention under §1225(b)(2)(A) comes with a lack of procedural safeguards, including the opportunity for a bond hearing, which makes it extraordinarily difficult to challenge his detention. *Cunin v. McShane*, 2025 WL 3542999, at *2 (M.D.Pa. Dec. 10, 2025) ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely"). However, third, the Government has an interest in detaining noncitizens "to ensure [their] appearance . . . at future immigration proceedings and to prevent danger to the community." *Quispe*, 2025 WL 3537279 at *7 (citing *Zadvydas*, 533 U.S. at 690). The court does not doubt that Nabiev will attend future immigration proceedings. During his pre-detention term of release, he complied with his conditions of release, including attending scheduled check-ins. Moreover, he currently has an appeal of an order of removal pending, providing him strong incentive to appear at future proceedings, and his wife and children reside in the United States, giving him reason not to flee. However, it appears to the court that the Government may have an interest in detention "to prevent

- 10 -

danger to the community." The Government notes that a March 3, 2021, background check revealed a hit for "[n]on-violent criminal activity, [including] non-CT financial criminal activity, mail fraud, wire fraud, passport fraud, visa fraud, identity fraud, [and] vehicle theft." (Doc. 10-2 at 4). Nabiev argues that he "worked in the banking sector in Uzbekistan before being coerced into a false confession regarding his employer's illegal activities—a coercion that he fled, eventually bringing his family to the United States seeking . . . protection." (Doc. 12 at 4-5). He further argues that the flagged criminal activity did not coincide with any arrest, charge, or conviction, and that "unverified, unsubstantiated allegations from the Uzbekistan government— a government that Freedom House rates 8/100 ('Not Free') and that the U.S. State Department describes as lacking an independent judiciary—cannot constitute clear and convincing evidence of danger to the community." *Id.* at 6; (Doc. 13 at 11). This dispute over the circumstances surrounding Nabiev's alleged criminal activity would be better adjudicated at a bond hearing before an Immigration Judge, who would have greater access to information that could resolve any factual disputes. Furthermore, Nabiev will have the opportunity to raise these same arguments at his bond hearing.

Thus, upon weighing of the *Mathews* factors in light of the information available to it at this time, the court finds that Nabiev's continued detention

- 11 -

under §1225(b)(2)(A) does not violate his procedural due process rights as the Government may have an interest in his continued detention to prevent danger to the community. Therefore, while Nabiev is entitled to a bond hearing under §1226(a), where he can argue for his release, he is not entitled to release by this court at this time.

## IV.   CONCLUSION

For the foregoing reasons, Nabiev's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **GRANTED** insofar as it requests a bond hearing. The Government will be required to provide Nabiev with a bond hearing under 8 U.S.C. §1226 within fourteen days of the court's accompanying order.

MALACHY E. MANNION
United States District Judge

DATE: 5/28/26

26-904-01

- 12 -